IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BFI WASTE SERVICES, LLC dba REPUBLIC SERVICES OF TROY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:25-CV-383 |
| TOWN OF LIBERTY, a body politic of North Carolina, and SCOTT KIDD, in his individual capacity and in his official capacity as Town Manager, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, Chief District Judge.

The plaintiff, BFI Waste Services, LLC, alleges that the town of Liberty, North Carolina breached a services contract it had with BFI and that the town's manager, Scott Kidd, negligently misrepresented facts during the negotiation of that contract, negligently conducted the bidding process for that contract, and tortiously interfered with that contract's performance. The defendants move to dismiss BFI's complaint for failure to state a claim. Because BFI has not plausibly alleged that it had a contract with the Town or that Mr. Kidd owed BFI a duty of care, the motion to dismiss will be granted.

## I.    Background

At the motion to dismiss stage, all well-pleaded facts alleged in the complaint are treated as true, and all reasonable inferences therefrom are drawn in favor of the plaintiff. *Hammock v. Watts*, 146 F.4th 349, 359 (4th Cir. 2025). The facts stated here come from

the amended complaint, Doc. 19, and the Town's charter, Doc. 23-1, of which the Court takes judicial notice.

The Town of Liberty is a municipality organized under North Carolina law. Doc. 19 at ¶ 2. Like all North Carolina municipal corporations, the Town's powers are defined by a charter. N.C. Gen. Stat. § 160A-11. The Town's charter gives it the power to contract, stating that:

> (a)    Unless otherwise provided by law, no contract shall be binding upon the Town of Liberty unless it is either:
> (1) Made by or pursuant to an ordinance or resolution that authorizes the town to enter into a contract for an identified purpose;
> (2) Reduced to writing and approved by the Council; or
> (3) Authorized by ordinance or resolution referring generally to a class of contracts (which classification may be on the basis of amount, subject matter, or other basis) that may be executed by designated officials on behalf of the town.
> (b)    Unless otherwise provided by ordinance or resolution or by general law, no contract or deed shall be binding upon the town unless signed by the town manager and attested by the town clerk.

Act of June 15, 1981, ch. 579, § 7, 1981 N.C. Sess. Laws 846, 846–47.

BFI is a waste services company that has provided contract trash collection services for the Town since 2005. Doc. 19 at ¶ 9. The 2005 contract had a five-year term, and since 2010 the parties had renewed the deal every five years without issue. *Id.* at ¶¶ 9–12. That changed in 2024.

That summer, the parties began initial negotiations over the regular renewal of BFI's contract. *Id.* at ¶ 13. By late June, Mr. Kidd and BFI had reached an oral agreement to extend the contract for another five years. *Id.* They put the extension in writing in early 2025. *Id.* at ¶ 17. Mr. Kidd signed the agreement on behalf of the Town on February 18, 2025, *id.* at ¶ 20, and BFI signed eight days later. *Id.* at ¶ 21.

2

The same day that BFI signed the extension, Mr. Kidd informed BFI that the extension was invalid because it had not been pre-audited. *Id.* at ¶ 25. A week later, at the Town's annual budget retreat, the consensus amongst the town council was that Mr. Kidd would select the recipient of the new trash services contract. *Id.* at ¶¶ 27–28. Mr. Kidd solicited bids and awarded the contract to Meridian Waste North Carolina, LLC, one of BFI's competitors. *Id.* at ¶¶ 28, 30. The town clerk attested to the contract with Meridian. Doc. 19-11 at 21. The town attorney later agreed no pre-audit certificate had been required for the agreement with BFI. Doc. 19 at ¶ 31.

At this point, Mr. Kidd realized that the Town may have entered two simultaneous waste services contracts, and he asked Meridian to void the contract. Doc. 19-12 at 3. The Town then informed BFI and Meridian that both contracts were invalid because the town council had never given Mr. Kidd permission to sign them. Doc. 19-14 at 2.

Mr. Kidd re-solicited bids, and the contract was awarded to Meridian. Doc. 19 at ¶¶ 35, 40. BFI sued, Docs. 1, 19, and the Town and Mr. Kidd move to dismiss. Doc. 27.

## II. Discussion

### A. Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to prove its case in the complaint, *see, e.g.*, *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 291 (4th Cir. 2012); *Scott v. City of Durham*, No. 20-CV-558, 2021 WL 3856168, at *2 (M.D.N.C. Aug. 27, 2021), but the complaint's

allegations should "allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (cleaned up). Courts view the allegations in the complaint as true, drawing all inferences in the plaintiff's favor. *See Twombly*, 550 U.S. at 555–56; *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023).

## B. Breach of Contract and Tortious Interference

BFI's breach of contract, and tortious interference claims all require the existence of a contract.[1] *See Fox v. Lenoir-Rhyne Univ.*, 296 N.C. App. 613, 618, 909 S.E.2d 750, 754 (2024) (stating elements of breach of contract); *Warrender v. Gull Harbor Yacht Club, Inc.*, 228 N.C. App. 520, 536, 747 S.E.2d 592, 603 (2013) (stating elements of tortious interference with a contract).[2] The Town's charter only allows it to enter into contracts if it follows the requirements of § 7. BFI has not alleged that those requirements were followed here, so it has not stated a claim for breach of contract or tortious interference.

BFI alleges that it and Mr. Kidd signed a five-year extension of the waste services contract in February 2025. Doc. 19 at ¶¶ 20–21. There is no doubt that the Town possesses the capacity to contract, but it may only exercise that capacity consistent with

---

[1] BFI also seeks a declaratory judgment that the February 2025 agreement "is a valid, binding contract." Doc. 19 at ¶¶ 57–59. Since, as explained *infra*, BFI has not adequately alleged facts to support the contention that there was a contract, the declaratory judgment action will also be dismissed. *See, e.g.*, *Variety Store, Inc. v. Martinsville Plaza, LLC*, No. 19-CV-31, 2020 WL 1052525, at *3 (W.D. Va. Mar. 4, 2020).

[2] In diversity cases, federal courts must apply the law of the forum state, *Mathis v. Terra Renewal Servs., Inc.*, 69 F.4th 236, 242 (4th Cir. 2023), including the forum state's choice of law rules. *Towers Watson & Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 67 F.4th 648, 653 (4th Cir. 2023). Here, everything happened in North Carolina and, as the parties agree, North Carolina law governs all of BFI's claims.

the parameters the General Assembly has set. N.C. Gen. Stat. § 160A-11; *Porsh Builders, Inc. v. City of Winston-Salem*, 302 N.C. 550, 554, 276 S.E.2d 443, 445 (1981) ("Municipal corporations . . . possess only those powers conferred in the express language of a statute and those necessarily implied by law therefrom.").[3] Here, those parameters are in the town charter. For the Town to exercise its power to contract, the charter requires, among other things, that either the town council itself approved the contract or that the Town passed an ordinance authorizing Mr. Kidd to enter into the contract. *See* ch. 579, § 7, 1981 N.C. Sess. Laws 846, 846–47. There is no allegation in the complaint that either of these things happened.

Since BFI does not allege any facts tending to show that the February 2025 agreement complied with the requirements of § 7, there is no plausible allegation of a contract. *See Abbott Realty Co. v. City of Charlotte*, 198 N.C. 564, 567, 152 S.E. 686, 688 (1930) (noting that "[t]he power conferred by statute upon the board of commissioners of defendant city, as its governing body, to make or to authorize the making of contracts binding upon the city, must be exercised by said board in strict conformity to statutory provisions" and refusing to find a binding contract when it was not); *see also Data Gen. Corp. v. Cnty. of Durham*, 143 N.C. App. 97, 102–103, 545 S.E.2d 243, 247–48 (2001) (finding no valid contract where county did not follow requirements in statute "that must

---

[3] The defendants refer to the February 2025 agreement as a "contract" that is "*ultra vires*." *E.g.,* Doc. 28 at 9. But the Town had the authority to contract for waste collection services. This distinguishes the circumstances present here from cases like *Bowers v. City of High Point*, where a municipality lacks the capacity to contract on the subject matter in question, regardless of the procedures it follows. 339 N.C. 413, 423, 451 S.E.2d 284, 291 (1994). Be that as it may, the point is the same: a town can only do what its charter from the legislature allows it to do.

be met before a county may incur contractual obligations.").  And without sufficient allegations of a contract, BFI's breach of contract and tortious interference claims cannot go forward.

BFI alleges and contends that compliance with § 7 was not required because the February 2025 contract was simply an extension of the 2005 contract.  It points out that the 2005 contract and each one since explicitly allowed extensions after five years.  Doc. 19 at ¶¶ 9–11, 63.  But the 2005 agreement and later extensions did not give BFI the unilateral right to extend those agreements; they provided that the parties could mutually agree to a five-year extension on the same terms.  *Id.* at ¶ 9; Doc. 19-3 at 2.  In other words, the contracts stated the obvious: the parties could agree to a new contract.  *See generally Lewis v. Lester*, 235 N.C. App. 84, 86, 760 S.E.2d 91, 92–93 (2014) ("The essential elements of a valid, enforceable contract are offer, acceptance, and consideration.").  To enter into a contract in 2025, the Town had to abide by § 7.  There are no allegations that it did so.

In evaluating whether a complaint states a claim, courts are not required to "accept as true legal conclusions drawn from the facts or any other unwarranted inferences, unreasonable conclusions, or arguments."  *Just Puppies, Inc. v. Brown*, 123 F.4th 652, 660 (4th Cir. 2024) (cleaned up).  BFI's allegation that the 2025 contract was an "extension" that did not require compliance with § 7 is a legal conclusion not warranted by the facts alleged or the documents on which it relies.

Alternatively, BFI alleges that the town council authorized Mr. Kidd to enter into the February 2025 agreement at the budget retreat.  Doc. 19 at ¶¶ 27, 63.  But the budget retreat occurred a week after BFI and Mr. Kidd signed the agreement, and soon after that

6

retreat Mr. Kidd solicited new bids. Doc. 19 at ¶ 28. Moreover, the plaintiff alleges only that Mr. Kidd claimed a "consensus" by the council members; there is no allegation of a vote or any other fact plausibly suggesting that the town council authorized by "ordinance or resolution" a class of contracts that Mr. Kidd could execute on the Town's behalf. *See id.* at ¶ 27 (citing Doc. 11-1 at ¶ 21); *see also North Carolina ex rel. City of Albemarle v. Nance*, 266 N.C. App. 353, 361, 831 S.E.2d 605, 611 (2019).

BFI has not plausibly alleged the existence of a contract between it and the Town. Its breach of contract claim against the Town and its tortious interference claim against Mr. Kidd will be dismissed.

### C. Negligence and Negligent Misrepresentation

BFI alleges that Mr. Kidd was negligent because he did not inform BFI of the restrictions imposed by the town charter and that he negligently misrepresented the extent of his authority to BFI. *Id.* at ¶¶ 76–79, 86–89. Negligence and negligent misrepresentation claims require a duty of care on the part of the defendant, Mr. Kidd. *See Parker v. Town of Erwin*, 243 N.C. App. 84, 110, 776 S.E.2d 710, 729–30 (2015) (stating elements of negligence); *Brinkman v. Barrett Kays & Assocs., P.A.*, 155 N.C. App. 738, 742, 575 S.E.2d 40, 43–44 (2003) (stating elements of negligent misrepresentation).

In an arms-length commercial transaction, a defendant owes no duty to provide a plaintiff with accurate material information unless the defendant has exclusive control over that information. *See Kindred of N.C., Inc. v. Bond*, 160 N.C. App. 90, 101, 584 S.E.2d 846, 853 (2003). So, a defendant owes no duty to provide material information that is

7

"publicly available and readily accessible" to a plaintiff. *Rountree v. Chowan Cnty.*, 252 N.C. App. 155, 161–62, 796 S.E.2d 827, 832 (2017).

Here, the Town's charter was publicly available and readily accessible to BFI. *See* ch. 579, § 7, 1981 N.C. Sess. Laws 846, 846–47 (scanned copy available online at https://www.ncleg.gov/Documents/1/12455); *see also North Carolina v. Duncan*, 272 N.C. App. 341, 350 n.3, 846 S.E.2d 315, 322 n.3 (2020) ("Every one competent to act for himself is presumed to know the law." (quoting *North Carolina v. Boyett*, 32 N.C. (10 Ired.) 336, 343 (1849)). BFI had the opportunity to appraise itself of the requirements for contracts with the Town and of the risks involved with proceeding without authorization from the town council. While its course of dealing with the Town may have led BFI to believe that Mr. Kidd had the authority to unilaterally contract on behalf of the Town, it has long been recognized that people "must turn square corners when they deal with the Government." *Rock Island A. & L. R. Co. v. United States*, 254 U.S. 141, 143 (1920). Since BFI has not plausibly alleged a duty on the part of Mr. Kidd, its negligence and negligent misrepresentation claims must likewise be dismissed.

It is **ORDERED** that the defendants' motion to dismiss, Doc. 27, is **GRANTED**. Judgment will be entered separately as time permits.

This the 27th day of October, 2025.

_____
UNITED STATES DISTRICT JUDGE